**[Cite as *State v. Allen*, 2022-Ohio-406.]**

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29080 |
| | : | |
| v. | : | Trial Court Case No. 2020-TRD-5380 |
| | : | |
| ANTAMEKA L. ALLEN | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of February, 2022.

. . . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, Appellate Division, 335 West Third Street, Room 372, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. No. 0068346, 70 Birch Alley, Suite 240, Dayton, Ohio 45440
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Antameka L. Allen appeals from a judgment of the Dayton Municipal Court, which after a bench trial, found her guilty of failure to stop after an accident and failure to keep an assured clear distance. For the reasons that follow, the trial court's judgment will be affirmed.

I.      Facts and Procedural History

{¶ 2} On September 15, 2020, Shanata Cosby was stopped by a red light at the intersection of River View Avenue and Paul Laurence Dunbar Street in Dayton waiting to make a right-hand turn. When the light turned green, Cosby noticed a pedestrian in the crosswalk, so instead of making her turn onto Paul Laurence Dunbar, she paused to let the man cross the street. As she was stopped waiting to turn, Cosby was rear-ended by the red Chevy Impala driven by Allen. After the impact, Cosby made the right-hand turn, parked on the side of the road, and took a picture of the Allen's car. Allen drove her car straight through the intersection and stopped. Cosby called the police.

{¶ 3} Trial testimony indicated that Allen then approached Cosby's car and was immediately argumentative. According to Cosby's testimony, Cosby told Allen that she was not going to talk to her and that they would wait until police officers arrived to sort things out. Allen, though, was not satisfied with that reply and shifted her focus to Cosby's 20-year-old daughter, who was a passenger in the car. Cosby again shut down the conversation. Allen then returned to her vehicle and drove off. No information was exchanged.

{¶ 4} After Allen left the scene, Cosby called the police back and made an appointment to meet with detectives the following day. While Cosby did not know the

name of the woman who rear-ended her, she had taken a picture of the vehicle. Officers were able to use the picture, which included the license plate, to discern the identity of the driver – Allen. Detectives later contacted Allen, who, in a written statement, confirmed that she rear-ended Cosby, but claimed that Cosby refused to exchange information.

{¶ 5} Allen ultimately was charged with not having a valid driver's license, a first-degree misdemeanor; failure to stop after an accident, a first-degree misdemeanor; and failure to keep an assured clear distance, a minor misdemeanor. After several months of delays, the case proceeded to a bench trial on March 8, 2021, at which Allen was found not guilty of not having a valid driver's license, but guilty of failure to stop after an accident and failure to keep an assured clear distance. The court sentenced her to a suspended 180-day jail sentence, non-reporting probation, a driver's license suspension of six months, and fines and costs. Her sentence, however, was stayed by the trial court pending appeal.

{¶ 6} On appeal, Allen raises three assignments of error. We will address them in a manner that facilitates our analysis.

## II.    Failure to Stop After an Accident

{¶ 7} In her first assignment of error, Allen argues that the guilty verdict on the failure to stop after an accident charge was based on insufficient evidence. She also claims as part of her third assignment of error that the conviction was against the manifest weight of the evidence. Because these are related topics, we will consider them together.

{¶ 8} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to permit the case to go to trial or to sustain the verdict as a matter of law. *State v. Henderson,* 2d Dist. Montgomery

No. 28975, 2021-Ohio-3943, ¶ 14. Our role when reviewing the sufficiency of the evidence to support a conviction is to "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 9} When an appellate court examines whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A case will not be reversed as being against the manifest weight of the evidence except "in the exceptional case in which the evidence weighs *heavily* against the conviction." (Emphasis added.) *Id.* "When engaged in this limited reweighing, the appellate court may not merely substitute its view for that of the trier of fact[.]" *State v. Thompson*, 10th Dist. Franklin No. 16AP-812, 2017-Ohio-8375, ¶ 25.

{¶ 10} It is well established that, when conflicting evidence is presented, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed one side's testimony over the other. We "will not substitute [our] judgment for that of the trier of fac[t] on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *State v. Smith*, 2d Dist. Montgomery No. 25462, 2013-Ohio-5345, ¶ 16.

{¶ 11} In the case before us, Allen was charged with a violation of R.C. 4549.02, which provides that "[i]n the case of a motor vehicle accident or collision, * * * the operator of the motor vehicle, having knowledge of the accident or collision, immediately shall stop * * * at the scene of the accident or collision. The operator shall remain on the scene * * * until the operator has given the operator's name and address, * * * together with the registered number of that motor vehicle, to all of the following: (a) any person injured in the accident or collision; (b) the operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision; (c) the police officer at the scene[.]" There can be little debate that the State presented evidence of every element of this statute.

{¶ 12} It is undisputed, at both the trial level and on appeal, that Allen rear-ended Cosby. It is also without question that Allen knew it. Further, Allen admits that she did not give her information to anyone (Cosby or law enforcement) before leaving the scene of the accident.

{¶ 13} The trial transcript indicates that, after the accident, Allen approached Cosby's car and started to argue, demanding to know why Cosby had stopped her vehicle. After explaining that there was a pedestrian in the crosswalk, Cosby informed Allen that the police had been called and that they could sort things out when officers arrived. "Let the police handle it. We'll talk to the police when they get here." Trial Tr. at 27. Nevertheless, according to Cosby's testimony, Allen continued to be aggressive, and because Cosby would not engage, Allen started to talk to Cosby's daughter, who was a passenger in the car. Cosby told Allen not to talk to her daughter, so Allen walked back to her car and left the scene.

{¶ 14} Cosby testified that after Allen drove away, she called the police to let them

know what had happened and scheduled a time the following day to meet. She further stated that she did meet with police the next day and explained what had happened, wrote out a statement, and gave them pictures and a video that showed Allen driving away.

{¶ 15} Allen did not testify in her own defense, but the State entered into evidence a statement she gave to police. In it, she admitted to rear-ending Cosby and to driving away before information was exchanged. Based on the testimony and evidence presented at trial, every element of the crime of failure to stop after an accident was established.

{¶ 16} Nevertheless, Allen argues that her conviction should not stand because she was prevented from exchanging information with Cosby; she claims that she "attempted to communicate with the other driver and her daughter, but they refused to cooperate with [her]." Appellant's brief at 4. While Cosby conceded at trial that she communicated only sparingly with Allen, she did clearly express that she had contacted the police and that she and Allen would talk to the officers when they arrived. Even if the court believed that Allen *attempted* to give her information to Cosby, the statute clearly requires more than just an attempt. It requires that the party stay on scene until "the operator has given the operator's name and address and, if the operator is not the owner, the name and address of the owner of that motor vehicle, together with the registered number of that motor vehicle," to the other party and/or the police at the scene of the accident. R.C. 4549.02(A)(1).

{¶ 17} Even if, for the sake of argument, we were to assume that the trial court believed that Allen had been prevented from turning over her information to Cosby, the guilty verdict would still not be a miscarriage of justice, because Allen could have given

the information to the police once they arrived on scene, as Cosby testified that she had called the police, and Allen left before they got there. This is not to say, though, that a motorist *must* remain on scene until police arrive in a minor accident such as this – the statute does not require that – but if Allen was not going to give her information to Cosby, the other party involved in the crash, her other option was to give the information to the police, who were on the way.

{¶ 18} Allen's conviction for failure to stop after an accident was based on sufficient evidence and was not against the manifest weight of the evidence. The first assignment of error is overruled. The third assignment of error, as it relates to failure to stop after an accident, is also overruled.

### III.    Failure to Keep an Assured Clear Distance

{¶ 19} In her second assignment of error, Allen contends that the guilty verdict on the failure to keep an assured clear distance charge was based on insufficient evidence. In part of her third assignment of error, she also asserts that the conviction was against the manifest weight of the evidence. We will consider the issues together.

{¶ 20} R.C. 4511.21(A) states that "no person shall drive any motor vehicle * * * upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." To demonstrate a violation of R.C. 4511.21(A), the State must prove that the driver hit an object that (1) was ahead of him in his path of travel; (2) was stationary or moving in the same direction as the driver; (3) did not suddenly appear; and (4) was reasonably discernable. *Grout v. Joseph*, 2d Dist. Clark No. 2000-CA-20, 2000 WL 1513930, *2 (Oct 13, 2000), citing *Pond v. Leslein*, 72 Ohio St.3d 50, 52, 647 N.E.2d 477 (1995).

{¶ 21} Allen does not contest the first three elements of the offense but does dispute that Cosby's car was reasonably discernable. She claims that the State did not submit evidence of the weather and road conditions, speed at the time of impact, or the speed limit on the stretch of roadway, and because of that, the guilty verdict was in error. We disagree. In most cases the question of "whether the object with which the collision occurs is discernable" is an easy question; "[a]n automobile * * * stopped on a highway in a driver's path during daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernible object as a matter of law." *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987), paragraph two of the syllabus.

{¶ 22} In this case, Allen was stopped behind Cosby at the red light, which means Allen discerned that there was a car in front of her initially. In addition, the State presented a video at trial which showed Allen driving away from the scene in broad daylight, and in good weather and road conditions. The argument that Cosby's car was not reasonably discernable, or that the State failed to prove the elements of the offense, is without merit.

{¶ 23} Allen's second assignment of error is overruled. The third assignment of error, as it pertains to failure to keep an assured clear distance, is overruled as well.

### IV.    Conclusion

{¶ 24} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


TUCKER, P. J. and WELBAUM, J., concur.

Copies sent to:

Amy B. Musto

John A. Fischer
Hon. Mia Wortham Spells