[Cite as *RSS UBSCM2018C9-OH IMG, L.L.C. v. 1360 E. Ninth CLE, L.L.C.*, 2024-Ohio-2577.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

RSS UBSCM2018C9-OH IMG, LLC,    :

    Plaintiff-Appellee,    :

                                   No. 112858

    v.    :

1360 EAST NINTH CLE, LLC, ET AL.,    :

    Defendants-Appellants.    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 3, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-917685

---

### *Appearances:*

Porter Wright Morris & Arthur LLP, Tami Hart Kirby, and Emma M. Walton, *for appellee.*

Ross M. Babbitt Co., LPA, and Ross M. Babbitt; Judge Lang & Katers, LLC, and Christopher Katers, pro hac vice, *for appellants.*

MARY J. BOYLE, J.:

{¶ 1} In this foreclosure action, defendant-appellant, 1360 East Ninth CLE, LLC ("1360 East Ninth"), appeals the trial court's judgment adopting the magistrate's decision granting foreclosure of the subject property, which is

commonly known as the IMG Center in Cleveland, Ohio, in favor of plaintiff-appellee, RSS UBSCM2018C9-OH IMG, LLC ("RSS").  For the reasons set forth below, we affirm the trial court's judgment.

## I.  Facts and Procedural History

### A.  The Loan Agreement

{¶ 2}   In February 2018, 1360 East Ninth executed a loan agreement with USB AG ("Original Lender") where 1360 East Ninth borrowed $17,000,000 from the Original Lender to purchase the IMG Center ("Loan").  1360 East Ninth also executed a promissory note in the original principal sum of $17,000,000 ("Note").  To secure the obligations in the Note, 1360 East Ninth executed an Open-End Mortgage and Security Agreement (the "Mortgage"), which encumbered the IMG Center and was recorded with the Cuyahoga County Fiscal Office.  To secure further payment of the Note, 1360 East Ninth executed an Assignment of Leases and Rents ("Assignment of Rents") on the IMG Center, which was also recorded with the Cuyahoga County Fiscal Office.  The Note and the Mortgage were subsequently assigned and transferred to RSS.[1]

### B.  The Default Events

{¶ 3}   In December 2018, RSS notified 1360 East Ninth of its failure to comply with the cash management provisions under the Loan by a letter from Jordan Claussen ("Claussen").  In the letter, Claussen, a loan support analyst with

---

[1] In its appellate brief, RSS states that it was formed as a single-purpose entity to proceed with this foreclosure action.

Midland Loan Services, stated that 1360 East Ninth is required to deposit the monthly rental income into the "DACA Account" within one business day of receipt. Claussen further stated that 1360 East Ninth's obligations with respect to the cash management requirements are unconditional and 1360 East Ninth is not to withhold rents or otherwise divert funds from the "DACA Account." Claussen then advised that 1360 East Ninth is to immediately comply with the cash management requirements of the Loan and its failure to do so may result in Midland, on behalf of the Lender, declaring an event of default under the Loan.

{¶ 4} RSS also sent notices to 1360 East Ninth in April and May 2019 of other various events of default that occurred under the Loan. According to RSS, 1360 East Ninth: (1) failed to make the monthly debt service for the IMG Center; (2) created a lien against the IMG Center; (3) failed to comply with the cash management provisions required under the Loan, and failed to cure this default within the time period set forth in the Loan; (4) failed to comply with the financing reporting requirements; and (5) failed to comply with the Loan due to the imposition of a building and housing code violation from the City of Cleveland. As a result, RSS accelerated the indebtedness due on the Loan and demanded payment from 1360 East Ninth. Under the terms of the Loan and Mortgage, RSS was entitled to collect default interest, a prepayment premium, and late charges and expenses based on the occurrence of a default event, and RSS could institute a foreclosure action to complete the foreclosure of the mortgage to dispose of the property.

### C. The Foreclosure Complaint

**{¶ 5}** In July 2019, RSS filed a six-count complaint for foreclosure against 1360 East Ninth, James Breen ("Breen"), as guarantor, and others seeking: (1) the foreclosure of the mortgage interests of RSS in the IMG Center; (2) recovery of collateral; (3) the assignment of the rents and leases; (4) the appointment of a receiver; (5) a claim for recovery of certain obligations from 1360 East Ninth arising out of the Loan; and (6) a claim for recovery of certain obligations from Breen arising out of the Loan. RSS alleged that as of June 7, 2019, 1360 East Ninth owed it the principal sum of $16,804,060.90 plus interest, attorney fees, and other charges that continued to accrue. Relative to this appeal, 1360 East Ninth filed an answer in response to RSS's complaint. In its answer, 1360 East Ninth admitted to certain allegations in RSS's complaint, including paragraphs 9, 10, 15, 21, 27, and 28. These paragraphs provide as follows:

> 9. Pursuant to Section 10.1(a)(i), an Event of Default has occurred under the Loan Documents (as herein defined) as a result of Borrower's failure to make the monthly Debt Service for the Property.

> 10. Additionally, an Event of Default has occurred under Section 10.1(a)(x) of the Loan Agreement due to Borrower's creation of a Lien (as defined in the Loan Agreement) on the Property.

> . . .

> 15. Pursuant to Article 10 of the Loan Agreement, Article 2 of the Note, and Article 7 of the Mortgage, upon an Event of Default, Noteholder may declare the entire debt accelerated, thereby making it immediately due and payable. Noteholder has accelerated the indebtedness and demanded payment from Borrower.

> . . .

21. On or about February 23, 2018, Borrower, by its authorized signatory, executed and delivered to the Original Lender a promissory note in the original principal sum of $17,000,000.00 (the "**Note**"). A true, correct, and complete copy of the Note is attached hereto as **Exhibit 3**, and is incorporated herein by this reference. The Note was assigned to Noteholder by a series of allonges that are attached to the Note. (Ex. 3.)

. . .

27. On or about February 23, 2018, to secure payment of the Note and performance of the other terms contained therein and in the related loan documents, Borrower, by its authorized signatory, executed and delivered to the Original Lender an Open-End Mortgage and Security Agreement (the "**Mortgage**") respecting the Property.

28. The Mortgage was duly recorded on February 23, 2018 with the Cuyahoga County, Ohio Fiscal Office as AFN 201802230499 and constitutes a valid and existing first lien on the Property, subject only to the lien of unpaid real property taxes and assessments, if any. A true, correct, and complete copy of the Mortgage is attached hereto as **Exhibit 4**, and is incorporated herein by this reference. The Mortgage has been assigned by the Original Lender to the Second Lender pursuant to an Assignment which was recorded on May 21, 2018 with the Cuyahoga County, Ohio Fiscal Office as AFN 201805210687. (Ex. 5.). The Mortgage has been assigned by the Second Lender to Noteholder pursuant to an Assignment, which was recorded on June 14, 2019 with the Cuyahoga County, Ohio Fiscal Office as AFN 201906140141. (Ex. 5.). True correct, and complete copies of mortgage assignments are collectively attached hereto as **Exhibit 5**, and are incorporated herein by this reference.

(Emphasis in original.) RSS's Complaint (Aug. 28, 2019).

{¶ 6} Shortly after filing its complaint, RSS moved the trial court to appoint a receiver over the IMG Center. 1360 East Ninth objected to the appointment. The court granted the motion and appointed a receiver ("Receiver") over the property in October 2019.

*D. Motion for Summary Judgment*

{¶ 7} In September 2020, RSS filed a motion for summary judgment on Counts 1-3 of its complaint. In support of its motion, RSS included the affidavit of Danny Ornstein, an Asset Manager at Rialto Capital Advisors, LLC ("Rialto"), the special servicer for RSS. RSS argued that summary judgment was appropriate because it satisfied each of the elements necessary to entitle it to foreclosure. Specifically, 1360 East Ninth admitted through its answer that the Note and the Mortgage were executed and delivered and that the Mortgage was validly recorded; 1360 East Ninth admitted through its answer that it has failed to make payments due under the Note, which constituted a default under both the Note and the Mortgage; and that $23,341,928.42 was the total amount due as of February 1, 2020; and is the only condition precedent to foreclosure. 1360 East Ninth opposed RSS's summary judgment motion, contending that issues of fact remain as to whether RSS is entitled to foreclosure based on its failure to negotiate in good faith and mitigate its damages; RSS breached the Loan first, excusing its performance; and RSS has not established a prima facie case of default.

{¶ 8} In March 2022, the magistrate entered his decision granting RSS's motion for summary judgment. 1360 East Ninth filed objections to the magistrate's decision. The trial court then conducted an independent review and issued an order affirming the magistrate's decision and overruling 1360 East Ninth's objections. The magistrate's decision, which was adopted by the trial court, determined that (1) 1360 East Ninth had judicially admitted to its nonmonetary and monetary defaults of the

Loan, and as a result, RSS met its burden of proving a default by 1360 East Ninth; (2) the affidavits submitted with RSS's motion for summary judgment proved the $23,341,928.42 owed on the Loan, and the affidavits are admissible under the adoptive business records exception to the hearsay rule; (3) 1360 East Ninth failed to provide any evidence creating a genuine issue of material fact regarding whether 1360 East Ninth's performance was excused due to RSS's alleged failure to disburse certain reserve funds; and (4) RSS established that it is the holder of the Loan documents.

{¶ 9} It is from this order that 1360 East Ninth now appeals, raising the following five assignments of error for review:

**Assignment of Error I:** The lower court erred in not considering the equitable arguments contained in [1360 East Ninth's] initial response brief.

**Assignment of Error II:** The trial court erred in finding that [RSS] had established its prima facie case of default.

**Assignment of Error III:** The trial court erred in finding [1360 East Ninth] did not create a genuine issue of fact regarding whether [1360 East Ninth's] performance was excused due to [RSS]'s failure to disburse reserve funds.

**Assignment of Error IV:** The trial court erred in finding that [RSS] had proven its prima facie case of the amount of principal and interest due.

**Assignment of Error V:** [RSS] has not established it is a holder of the note.

## II. Law and Analysis

### A. Summary Judgment Standard of Review

{¶ 10} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). In a de novo review, this court affords no deference to the trial court's decision and independently reviews the record to determine whether the denial of summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.).

{¶ 11} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.*, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217 (1994).

{¶ 12} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party must then point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293.

{¶ 13} "Because summary judgment represents a shortcut through the normal litigation process by avoiding a trial, the burden is strictly upon the moving

party to establish, through the evidentiary material permitted by the rule, that there is no genuine issue of material fact and that [the moving party] is entitled to judgment as a matter of law.  Civ. R. 56(C)." *Angus v. Blue Cross & Blue Shield*, 1992 Ohio App. LEXIS 3935, *8 (8th Dist. July 30, 1992).

### *B. RSS Established that it is Entitled to Foreclosure*

{¶ 14} Within its assigned errors, 1360 East Ninth argues that (1) RSS's actions make the foreclosure inequitable because RSS denied 1360 East Ninth's attempt to redeem the property; (2) RSS did not make its prima facie case of default because the December 2108 Claussen letter is hearsay; (3) a genuine issue of fact remains as to whether 1360 East Ninth's performance was excused due to RSS's failure to disburse funds; (4) RSS did not make its prima facie case of amount owed because that portion of the record is hearsay; and (5) RSS failed to establish that it is the holder of the Note.

{¶ 15} To properly support a motion for summary judgment in a foreclosure action, the plaintiff must present

> "evidentiary quality materials" establishing:  (1) that the plaintiff is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the plaintiff is not the original mortgagee, the chain of assignments and transfers; (3) that the mortgagor is in default; (4) that all conditions precedent have been met; and (5) the amount of principal and interest due.  *See, e.g., United States Bank, N.A. v. Adams*, 6th Dist. No. E-11-070, 2012-Ohio-6253, ¶ 10, citing *Wachovia Bank v. Jackson*, 5th Dist. No. 2010 CA 00291, 2011-Ohio-3203, ¶ 40-45.

*Deutsche Bank Natl. Trust Co. v. Najar*, 2013-Ohio-1657, ¶ 17 (8th Dist.).

{¶ 16} While 1360 East Ninth presents several arguments, the fact remains that it admitted to default in its answer, even if it was partial default, and admitted that RSS is the holder of the Note and Mortgage. Additionally, RSS established that $23,341,928.42 is the amount due. All other evidentiary issues are of no consequence because RSS met the requirements needed to support its summary judgment motion.

{¶ 17} In its answer, 1360 East Ninth admitted to defaulting under Sections 10.1(a)(i) and (a)(x) of the Loan for failing to make the monthly debt service for the Property and creating a lien on the Property. 1360 East Ninth also admitted that RSS is the holder of the Note, which was assigned to RSS through a series of allonges. We note that if a party "unequivocally concedes a fact, that concession constitutes a judicial admission for the purposes of trial." *Haney v. Law*, 2008-Ohio-1843, ¶ 7, (1st Dist.), citing 29 Am.Jur.2d, Evidence, § 770 (2008). In *Gerrick v. Gorsuch*, 172 Ohio St. 417, 419-420 (1961), the Ohio Supreme Court recognized that judicial admissions can occur during the pleading stage. "Pleadings containing admissions against interest are admissible as evidence against the pleader, as long as the admissions involve material and competent facts." *Haney* at ¶ 7, citing 43 Ohio Juri. 3d, Evidence and Witnesses, § 289 (2008). Therefore, "a party who has alleged and has the burden of proving a material fact need not offer any evidence to prove that fact if its judicially admitted by the pleadings of the adverse party." *Gerrick* at 420.

{¶ 18} Furthermore, Ornstein's affidavit provided evidence of the amount of principal and interest due, which was properly admitted under the business records

exception to the hearsay rule. This exception provides that exhibits "'can be admitted as business records of an entity, even when that entity was not the maker of those records, provided that the other requirements of [Evid. R.] 803(6) are met and the circumstances indicate that the records are trustworthy.'" *RBS Citizens, N.A. v. Zigdon*, 2010-Ohio-3511, ¶ 14 (8th Dist.), quoting *Great Seneca Fin. v. Felty*, 2006-Ohio-6618, ¶ 14 (1st Dist.); *see also Green Tree Servicing, LLC v. Roberts*, 2013-Ohio-5362, ¶ 30 (12th Dist.). While Rialto did not create the Loan documents, we find that Ornstein's affidavit is admissible to support a summary judgment motion under the business records exception to the rule against hearsay. Ornstein was the asset manager of the Loan and was primarily responsible for the day-to-day management and administration of the Loan on behalf of RSS. Upon transfer of the Loan to Rialto, Ornstein familiarized himself with the Loan documents and records, including those records the master servicer provided to Rialto in the ordinary course of business between Rialto and the master servicer. Thus, the court did not err when it found the Ornstein affidavit was admissible.

{¶ 19} Based on the foregoing, we find that RSS established all the necessary elements to entitle it to a foreclosure. No genuine issues of material fact remain, RSS is entitled to judgment as a matter of law, and when construing the evidence most strongly in 1360 East Ninth's favor, summary judgment is appropriate.

{¶ 20} Accordingly, 1360 East Ninth's five assignments of error are overruled.

{¶ 21} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
EILEEN T. GALLAGHER, J., CONCUR